HARRIET E. POPE, administratrix, *vs.* HEYWOOD BROTHERS AND
WAKEFIELD COMPANY.

Middlesex.    March 2, 1915. — May 20, 1915.

Present: RUGG, C. J., BRALEY, DE COURCY, PIERCE, & CARROLL, JJ.

*Negligence*, Employer's liability.  *Agency.*  *Practice, Civil,* Exceptions.

In an action by one employed as machinist in a three story factory of the defend-
ant for personal injuries from a freight elevator being put in motion by a fellow
workman of the plaintiff on the third floor, when the plaintiff, who was en-
gaged in directing repairs on the elevator well above him, was sitting on the
sill of a doorway of the elevator well on the ground floor with his feet resting
on the platform of the elevator, it appeared that the accident happened after
the workmen's compensation act was in force and that the defendant was not
a subscriber under the act, so that under St. 1911, c. 751, Part I, § 1, cl. 2,
the defendant was liable to the plaintiff for the consequences of the negligent
acts of the fellow servants of the plaintiff in the defendant's employ.  There
was no evidence showing that any adequate precautions had been taken by
the defendant to prevent the use of the elevator while the work of repair was
going on either by warning or by instruction or by the posting of notices.
There was evidence that one of the defendant's employees had procured some
stock on the third floor and went to the elevator to take it down with him,
that there he met a fellow employee who was standing near the push button
that was used to ring a signal gong on the second story, that he received infor-
mation from this fellow employee which led him to suppose that the elevator
was in running order and he saw this fellow employee put his hand on the
button as if to ring the gong, that thereupon he pulled the rope, the elevator
started and the intestate was injured.  There also was evidence that, although
the gong was in working order, it did not sound.  *Held,* that the question of
the negligence of the defendant in failing to take adequate precautions to pre-
vent the use of the elevator while the work of repair was going on was for the
jury, as was the question whether the defendant's employee who failed to
sound the gong and who gave the information that it was safe to run the
elevator was negligent, and also the question whether the defendant's other
employee who started the elevator by pulling the rope without sounding the
gong was negligent.

In an action of tort for personal injuries from the starting of a freight elevator,
when the plaintiff's intestate was at work in the elevator well, the defendant's
bill of exceptions stated that the jury viewed the premises and "with the assent
of both counsel" the elevator was operated and its appurtenances inspected, and
also stated that there was evidence that at the time of the injury to the de-
ceased the elevator was in the same condition as when viewed by the jury.  The
bill then stated that the "reference to the view is made a part of the record

against the objection of the defendant who excepts thereto." *Held*, that the defendant, having presented the bill of exceptions, could not be heard to complain of what it contained, and also that there was nothing to indicate that the defendant was harmed in any way by the reference to the view.

CARROLL, J.   The plaintiff's intestate, while in the employ of the defendant as a machinist in its factory on October 11, 1912, suffered an injury from which he later died.   The defendant was not a subscriber under the provisions of the St. of 1911, c. 751, and amendments thereto, commonly known as the workmen's compensation act.   The plaintiff had a verdict, and the case is before us on the refusal of the presiding judge * to rule that the plaintiff was not entitled to recover.

The employer not being a subscriber, the employee's conduct in assuming the risk or in exercising care was not in controversy, and the only question before the jury was the negligence of the defendant.   The defendant is liable for its negligence in the construction, maintenance or operation of machinery, and under Part I, § 1, cl. 2, of the above cited statute it also is liable for the acts of its servants and agents toward their fellow servants in the course of their common employment.   If the master adopts an unsafe place for the doing of the work at hand, either in the means or method employed, he may be found to be negligent; and so if his servants, within the scope of their employment, fail to carry out his instructions, or are careless in their use of appliances, or make use of a dangerous method of carrying on the work, either with the consent or against the instruction of the master, he may be found to be negligent.

The deceased employee was engaged in repairing a freight elevator in the defendant's three story factory.   The work had been in operation for two or three weeks and at the time of the injury was nearly completed.   There were hatchways on the second and third floors through which the elevator passed in ascending and descending.   The hatchways of the third story were closed.   One

---

* *Hardy*, J.   The action was at common law to recover for personal injuries of the intestate that permanently incapacitated him for work. The writ was dated January 20, 1913.   The action was brought by the intestate himself.   He died eight months after his injury, and on September 17, 1913, the administratrix of his estate filed a suggestion of his death and was admitted as the plaintiff to prosecute the action.   The jury returned a verdict for the plaintiff in the sum of $2,120; and the defendant alleged exceptions.

side of the hatchways on the second story was open.   One Burness, who was helping the intestate, was standing on the ladder between the second and the third stories, oiling the runs.   The intestate was sitting on the doorsill on the ground floor, and was in this place for the purpose of directing Burness in the work and preventing the use of the elevator while the work of repair was in progress. The elevator platform was on the ground floor, from fifteen to eighteen inches below the doorsill, and the feet of, the intestate were upon the floor of the elevator.   A fellow employee in the third story started the elevator without warning and the intestate was so injured thereby that eight months later he died as a result.

There was evidence that if the elevator was locked it could not have started; but to carry on the work of repair, it had to be unlocked.

There was no evidence showing that any adequate precautions had been taken by the defendant to prevent the use of the elevator while the work of repair was going on, either by warning, instruction or by the posting of notices.   Under these circumstances, considering the peril to which the men engaged in the work were exposed, we think that the negligence of the defendant was a question for the jury.   "The vigilance and attention required must conform to the nature of the emergency and the danger to which others may be exposed, and is always to be judged of according to the subject matter, the danger and force of the material under the defendant's charge."   *Hutchinson* v. *Boston Gas Light Co.* 122 Mass. 219, 222.

On each landing there was an electric signal button, connecting with a gong five inches in diameter, which was at the elevator well on the second story.   The employee Hawkes testified that he came to the third floor for the purpose of getting some stock. Securing it, he went to the elevator and there "received information which led him to suppose" the elevator was in running order.   This information was received from Muse, a fellow employee.   Muse, standing near the push button for the bell, was seen by Hawkes to put his hand upon the button, as though to ring the bell.   Hawkes then pulled the rope, the elevator started and the plaintiff's intestate was injured.   Hawkes admitted that he did not hear the gong sound and there was other evidence

showing that, while the gong was in proper working condition at the time, it did not sound.

It was for the jury to pass on the neglect of Muse in failing to sound the gong and in giving the information that it was safe to run the elevator; and it was for the jury also to pass on the negligence of Hawkes in starting the elevator without sounding the gong; and the negligence of either one or both would be the negligence of the defendant.

The defendant's bill of exceptions shows that the jury viewed the premises and "with the assent of both counsel" the elevator was operated, the locking device inspected and the gong rung. There was evidence that at the time of the injury to the deceased the elevator was in the same condition as when viewed by the jury. The bill of exceptions states that the "reference to the view is made a part of the record against the objection of the defendant who excepts thereto." As to this exception it is enough to say that the defendant, having accepted and presented this bill of exceptions, cannot now be heard to question their accuracy. Moreover, there is nothing to indicate any harm to the defendant in this respect if the point be regarded as open. *Tully* v. *Fitchburg Railroad,* 134 Mass. 499, 503. *Rigg* v. *Boston, Revere Beach, & Lynn Railroad,* 158 Mass. 309, 313.

*Exceptions overruled.*

*H. S. Avery,* for the defendant.

*G. M. Poland & L. P. Jordan,* for the plaintiff, were not called upon.