## STATE EX REL. GEORGE A. LENNON ʏ. DISTRICT COURT OF DOUGLAS COUNTY AND OTHERS.[1]

October 5, 1917.

No. 20,597.

**Workmen's Compensation Act — casual employment.**

> The erection of a temporary shed by defendant, upon a farm owned but not operated by him, cannot be held to be an employment within the usual course of the trade, business, profession or occupation of defendant so as to make him liable under the Workmen's Compensation Act to a person accidentally injured in such erection while casually employed.

Upon the relation of George A. Lennon the supreme court granted its writ of certiorari directed to the district court for Douglas county to review the proceedings in that court, Roeser, J., brought under the Workmen's Compensation Act by relator, as employee, against Trask H. Fezler, as employer. Affirmed.

*Ralph S. Thornton,* for relator.

*Gunderson & Leach,* for respondents.

HOLT, J.

Certiorari to review a judgment of the district court disallowing a claim made by relator under the Workmen's Compensation Act. The undisputed facts are, in substance, these: The defendant owned a farm near the village of Osakis, Minnesota. When the accident, upon which relator bases the claim, happened, defendant did not operate the farm but

[1]Reported in 164 N. W. 366.

had it rented to a tenant who expected to soon take possession. Defendant lived in the village mentioned, "where he was dealing in horses, had a livery and auto livery business on a small scale and also did some auctioneering, and dealing in real estate," presumably as agent. Fire had destroyed the barn on the farm shortly before the accident to relator, and it was necessary to provide some temporary shelter for the tenant's stock. Early on the tenth of October, 1916, defendant called on relator and asked his assistance in constructing a shed for the purpose stated, informing him that he needed another man, in addition to the two carpenters and help he already had, to finish the work that day. Relator went with defendant and four other men to the farm and began to erect a temporary shed, 16 feet by 30 feet, which they would have completed that day but for a delay occasioned by a break down of the wagon on which the needed lumber was being brought to the premises. Relator and the two other carpenters were therefore requested to come back the next day to finish the shed and also to build a small chicken house. The work would not require the entire day. They came as requested, and about noon, when relator was assisting in boarding up the chicken house, he struck a nail in such a manner that it flew up and hit one of his eyes, practically destroying its vision. When relator was requested to come to work nothing was said as to the amount of his compensation. Upon these facts the court found that the employment of relator was casual only and was not in the usual course of the trade, business, profession or occupation of defendant, hence denied compensation.

The findings as to the casual character of the employment are not challenged, but it is claimed that the work came within the usual course of the business, trade, profession or occupation of defendant and that therefore under the decision of State v. District Court of Rice County, 131 Minn. 352, 155 N. W. 103, the injury is covered by the act notwithstanding the casual character of the employment.

It was part of defendant's business as a landlord, it is argued, to erect or repair the necessary structures on the farm, no matter what other trades or businesses he also might be engaged in. In support of this contention relator cites Maryland Casualty Co. v. Pillsbury, 172 Cal. 748, 158 Pac. 1031. However, that case turned upon the question whether a person employed to repair a tractor, used on a ranch, was excluded

from the benefits of the act by a clause reading like the one in our stat-
ute. A recovery was denied, and, in the opinion, the court suggested
arguendo that, had the injury been received in the building of a barn
on the ranch which would have become a part thereof and generally
useful only for ranch purposes, the result as to compensation might have
been different from the one then arrived at, for the court says a tractor
is an instrumentality useful for many things not connected with a ranch.
Thompson v. Twiss, 90 Conn. 444, 450, 452, 97 Atl. 328, L. R. A. 1916E,
506, is relied on. The principal contentions there were whether the
claimant was an employee and whether the employment to clear and
develop the defendant's lands was casual. The finding that it was not
casual, grounded on evidence that the claimant had entered upon a work
requiring weeks to complete, was sustained. The court also found that
the development of the land was one of the businesses of the defendant,
"not evidently his main business, and yet a very substantial one." The
decision is not of much weight here for both the facts and the statutes
are dissimilar. There is here no finding to the effect that constructing
this cheap temporary shed was any substantial part of the business of
defendant, either as a landlord or as a farmer. Nor do we think the
evidence would authorize such a finding. The Connecticut law is in the
phraseology of the English act and provides that the employee shall not
be construed to include "one whose employment is of a casual nature,
and who is employed otherwise than for the purposes of the employer's
trade or business." Our act contains this clause: "Nor shall the pro-
visions of this act apply to actions or proceedings to recover damages
or compensation for personal injuries sustained by domestic servants,
farm laborers, or persons whose employment at the time of the injury
is but casual and not in the usual course of the trade, business, pro-
fession, or occupation of his employer."[1]

The words "usual course" must be regarded as more restrictive than the
language employed in the Connecticut and English acts. This is the
view taken by the California courts in London & Lancashire G. & A. Co.
v. Industrial Acc. Com. 173 Cal. 642, 161 Pac. 2, and La Grande Laun-
dry Co. v. Pillsbury, 173 Cal. 777, 161 Pac. 988. Assuming that the
lease obligated defendant to erect a shelter for his tenant's stock, or that

[1][G. S. 1913, § 8202.]

he had voluntarily agreed so to do, we may say, in a certain sense, that the erection became his business or duty. But that cannot be the meaning of the word "business" in this statute. It must have the same general significance with respect to the work or calling of the employer as the words trade, profession, or occupation, hence must refer to the employer's ordinary vocation and not to every occasional, incidental, or insignificant work he may have to do. When we speak of a person's trade or profession we generally refer to that branch of the world's activities wherein he expends his usual everyday efforts to gain a livelihood. There is no evidence that defendant made it a part of his calling to rent out farms or erect buildings, either temporary structures or permanent. For all that appears this was the only farm he owned, and it may have been of such small area and value that its renting and care could not properly be classified either as a business or occupation. And certainly neither the renting of the farm nor the construction of this shed can be referred to as coming within the "usual course" of defendant's business or occupation.

Even the English act has been so construed that the facts of this case would not warrant compensation. It is said to afford compensation for injuries received only in the normal operations which form the part of the ordinary business carried on, and not to include incidental and occasional operations having for their purpose the preservation of the premises and appliances used in the business. Hayes v. S. J. Thompson Co. 6 B. W. C. C. 130; Rennie v. Reid, 1 B. W. C. C. 324; Pearce v. London & S. W. Ry. Co. 82 L. T. R. 487; Bargewell v. Daniel, 98 L. T. R. 257; Kelly v. Buchanan, 47 Ir. L. T. R. 228; Alderman v. Warren, 9 B. W. C. C. 507.

The supreme court of Illinois, in construing the clause "the usual course of trade, business, profession or occupation of the employer" in Uphoff v. Industrial Board, 271 Ill. 312, 315, 111 N. E. 128, L.R.A. 1916E, 329, held that an injury received by a workman hired by a farmer to erect a broom-corn shed on his farm was not received in the usual course of business of the employer. The Illinois act differs from ours in that an employee is excluded from the benefits of the law if the employment is casual, *or* if the injury did not occur in the usual course of the employer's trade, etc. But the meaning of the latter clause is not af-

fected by the conjunction which serves merely to show the relation to what precedes.

We see no grounds upon which this court can disturb the finding of the trial court that relator's employment was casual and not in the usual course of the trade, business, profession or occupation of defendant.

Affirmed.