NELSON, Appellant, *v.* STUKEY, Respondent.

(No. 6,639.)

(Submitted January 13, 1931. Decided March 4, 1931.)

[300 Pac. 287.)

278

*Messrs. Freeman, Thelen & Freeman,* for Appellant, submitted a brief; *Mr. J. P. Freeman* argued the cause orally.

*Messrs. Murch & Wuerthner* and *Messrs. Clift & Glover,* for Respondent, submitted a brief; *Mr. Julius J. Wuerthner* argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

Plaintiff brought this action to recover damages for personal injuries. Complete analysis of the pleadings is unnecessary. In general, the complaint alleges that plaintiff was employed by defendant as foreman to supervise the work of constructing an addition to an apartment house owned and operated by defendant; that defendant failed to elect to come under the Workmen's Compensation Act with respect to plaintiff; that on August 25, 1927, the plaintiff sustained injuries as a result of falling through a platform or passageway constructed on the roof of the addition to the apartment house and astraddle one of the joists. The action is based upon the negligence of the defendant, his servants and agents in the manner of constructing the passageway and in failing to warn plaintiff of its dangerous condition.

The answer alleges that plaintiff was employed by defendant in the capacity of an independent contractor; that plaintiff had sustained an injury on August 18, and that on August 25 he was able to move about only with the use of a cane; and that the injury of August 25 was brought about by reason of his own negligence in attempting to work when not physically fit. The answer affirmatively pleads contributory negligence of plaintiff, assumption of the risk by plaintiff, and that his injuries arose from the negligence of his fellow-servants. The reply may be treated as a general denial.

The cause was tried to the court and a jury. At the close of plaintiff's case defendant moved for a judgment of non-suit, which was sustained. Judgment was entered for defendant, from which plaintiff appealed.

1. The principal question presented is whether plaintiff's employment by defendant was of a casual nature. The

importance of this question is made apparent by reference to our statutes.

Section 2836, Revised Codes 1921, provides: "In an action to recover damages for personal injuries sustained by an employee in the course of his employment, or for death resulting from personal injuries so sustained, it shall not be a defense: (1) That the employe was negligent, unless such negligence was wilful; (2) That the injury was caused by the negligence of a fellow employee; (3) That the employee had assumed the risks inherent in, incident to, or arising out of his employment, or arising from the failure of the employer to provide and maintain a reasonably safe place to work, or reasonably safe tools or appliances." And section 2837, as amended by Chapter 121, Laws of 1925, provides: "The provisions of section 2836 shall not apply to actions to recover damages for personal injuries sustained by * * * persons whose employment is of a casual nature."

Hence, it will be seen from these sections of the statute that if the employment of plaintiff was of a casual nature, the defenses enumerated in section 2836 are available to defendant, otherwise not. It is the contention of defendant that the evidence shows the employment of plaintiff was of a casual nature, and that plaintiff's own evidence establishes the defenses enumerated in section 2836 and, therefore, that the court was justified in taking the case from the jury on motion for nonsuit.

The evidence bearing upon the issue of whether the employment was of a casual nature may be summarized as follows: Defendant, by profession, is a dentist, having maintained an office in Great Falls since 1911. He resides in the Stukey Apartments. The original building contains fifteen apartments, the addition twenty-three. He rents the apartments and collects the rent. He does the janitor work and firing for the apartments, with the assistance of a maid. As a witness for plaintiff, defendant testified that his usual trade, business, profession and occupation is that of dental surgery

and that he has never followed the business of constructing buildings for a livelihood. He characterized the apartment business as a side issue.

"Casual employment means employment not in the usual course of trade, business, profession, or occupation of the employer." (Sec. 2888, Rev. Codes 1921.) In *Industrial Accident Board* v. *Brown Bros. Lumber Co.*, 88 Mont. 375, 292 Pac. 902, we took occasion to point out that section 2863, as amended by Chapter 121, Laws of 1925, in defining "employer" and "workman" excludes "any person whose employment is both casual and not in the course of the trade, business, profession or occupation of the employer." But since the contention here is that plaintiff's employment was casual only because "not in the usual course of trade, business, profession or occupation" of the defendant, further comment upon section 2863, as amended, need not be made.

The line of demarcation between what is and what is not employment in the usual course of trade, business, profession or occupation of the employer is vague and shadowy. Each case must, of necessity, depend upon its own facts and circumstances. And an employer may, and often does, have more than one business, trade, occupation or profession. The following cases are illustrative: *Anderson* v. *McVannel*, 202 Mich. 29, 167 N. W. 860; *Shafer* v. *Parke, Davis & Co.*, 192 Mich. 577, 159 N. W. 304; *State ex rel. Marshall* v. *Roesch*, 108 Or. 368, 216 Pac. 749; *State* v. *Business Property Security Co.*, 87 Wash. 627, 152 Pac. 334; *Davis* v. *Industrial Commission*, 297 Ill. 29, 15 A. L. R. 732, 130 N. E. 333.

The word "business" has been said to mean the habitual or regular occupation that a person is engaged in with a view to earning a livelihood or gain. (*Marsh* v. *Groner*, 258 Pa. 473, L. R. A. 1918F, 213, 102 Atl. 127.) To the same general effect are *State ex rel. Lennon* v. *District Court*, 138 Minn. 103, 164 N. W. 366; *Abel* v. *State*, 90 Ala. 631, 8 South. 760.

Here it is clear that defendant operated the original apartment for the purpose of gain. The addition, which was to cost approximately $50,000, was being built for use for the same purpose. The question is, was the building of the addition in the usual course of business or occupation of defendant?

Many cases are cited in the briefs by plaintiff and defendant from other jurisdictions showing what other courts have held under statutes very similar to ours. Of those cited, only a limited few present facts such as we have before us.

In *State ex rel. Lundgren* v. *District Court*, 141 Minn. 83, 169 N. W. 488, the employer was engaged in the lumber and building material trade and decided to enlarge its business by adding coal and other fuel. It employed plaintiff to construct a shed as a storeroom for the coal. The court held that plaintiff was employed in the usual course of the employer's business, saying: "The addition was to become permanently a part of defendant's business, and the shed was a permanent structure, with a solid concrete foundation and floor. While the defendant was not a building contractor, nor engaged in specific work of that kind, the construction of the shed in question was in furtherance of its established business, a necessary part thereof, and we discover no sufficient reason for holding that it was outside of and beyond what is customary and usual in a situation of the kind. That should be the test in construing the statute. The construction of the shed should therefore be held within the usual course of defendant's business, within the meaning and contemplation of the statute. We so hold."

In the case of *Lackey* v. *Industrial Commission*, 80 Colo. 112, 249 Pac. 662, it was said: "We do not think that the erection of a building can be said to be within the usual course of a business to be carried on in that building, unless, perhaps, such business be the business of building and the structure be erected in the course of that business. Suppose a building contractor resolves to go into the hotel business and

for that purpose erects the hotel himself. The erection of that hotel may be in the usual course of his business as building contractor, but how can it be said that it is in the usual course of his business as a hotel keeper? He is an innkeeper when he opens his house for guests, not before. He is a filling station keeper when he opens his place to fill, not before. Illustrations and analogies might be multiplied without end. We must say that neither the preparation for the erection of a building for the filling station nor the erection of it was within the usual course of business of farming or keeping a filling station." But in that case the court, in distinguishing the case before it from that of *State ex rel. Lundgren* v. *District Court*, supra, pointed out that the *Lundgren Case* had to do with work in furtherance of an established business, while the case before the court involved the construction of a building to be used by the builder in a business new to him.

In the case before us the defendant was already engaged in the apartment business. The building of the addition was simply to enlarge that business. It was, we think, constructed in the furtherance of the business in which defendant was engaged, and are of opinion that plaintiff's employment was in the usual course of that business within the meaning of our Workmen's Compensation Act.

Without giving our approval to all of the following cases, in principle they support the conclusion we have reached, and some go much further: *Davis* v. *Industrial Commission*, 297 Ill. 29, 15 A. L. R. 732, 130 N. E. 333; *Allen* v. *American Milling Co.*, 209 Ill. App. 73; *Storrs* v. *Industrial Commission*, 285 Ill. 595, 121 N. E. 267; *Globe Indemnity Co.* v. *Industrial Acc. Com.*, 45 Cal. App. 328, 187 Pac. 452; *De Carli* v. *Manchester Public Warehouse Co.*, 107 Conn. 359, 60 A. L. R. 1191, 140 Atl. 637; *Holmen Creamery Assn.* v. *Industrial Commission*, 167 Wis. 470, 167 N. W. 808; *Gross & Bros. Co.* v. *Industrial Commission*, 167 Wis. 612, 167 N. W. 809; *Wagner* v. *Wooley*, 85 Ind. App. 259, 152 N. E. 856; *Gotchy* v. *North Dakota Workmen's Com. Bureau*, 49 N. D. 915, 194 N. W. 663; *Hygeia*

*Ice & Coal Co.* v. *Schaeffer,* 152 Md. 231, 136 Atl. 548; *Roman Catholic Archbishop of San Francisco* v. *Industrial Acc. Com.,* 194 Cal. 660, 230 Pac. 1; *Benoy* v. *Torkelson,* 161 Minn. 223, 201 N. W. 312.)

To the suggestion that this conclusion places an unjust burden upon a small operator who does a piece of work in an isolated instance, it is sufficient to say that a distinction is drawn between such a case and one such as we have before us.

Here, as above noted, the original apartment contains fifteen apartments; the addition twenty-three. The rule applicable is stated in the note in 50 A. L. R. 1177, as follows: "The mere owning of a house, maintaining it, and keeping it in repair and renting it, so that it may produce an income, is not sufficient to constitute a business, nor does the owning and renting of more than one house necessarily constitute a business; but such transactions at most only amount to a regular business within the meaning of the Compensation Act, when they are carried on to such an extent as to require a substantial and habitual devotion of time and labor to their management and operation."

Defendant relies upon the case of *Miller* v. *Granite County Power Co.,* 66 Mont. 368, 213 Pac. 604, in support of his contention that plaintiff here was not employed in the usual course of business, trade or occupation of defendant. That case involved facts substantially different from those here. The well in question there was not being sunk for the benefit, or at the request, of the Granite County Power Company, the alleged employer. In fact, it knew nothing about the matter. The foreman of the company testified in that case that he was having the well sunk for the purpose of obtaining water for himself and family. The court properly held that the person employed to dig the well was not engaged in the usual course of business of the Granite County Power Company.

But it is contended by defendant that the cases from other jurisdictions cited and relied upon in the *Miller Case* support

the conclusion contended for by him. After referring to a number of cases, this court in the *Miller Case* said: "We are satisfied that the authorities cited above interpret correctly the provisions of our Workmen's Compensation Act defining casual employment, and, viewed in the light of that interpretation and the evidence before us, Miller was not engaged in the usual course of his employer's business or occupation, even assuming that the well was being dug for the power company." Of the cases cited in the opinion in that case, containing facts bearing any similarity to those here presented, only the following merit our special attention: *Marsh* v. *Groner*, 258 Pa. 473, L. R. A. 1918F, 213, 102 Atl. 127; *State ex rel. Lennon* v. *District Court*, 138 Minn. 103, 164 N. W. 366; *Holbrook* v. *Olympia Hotel Co.*, 200 Mich. 597, 166 N. W. 876; *Packett* v. *Moretown Creamery Co.*, 91 Vt. 97, L. R. A. 1918F, 173, 99 Atl. 638; *Oliphant* v. *Hawkinson*, 192 Iowa, 1259, 33 A. L. R. 1433, 183 N. W. 805.

In the *Marsh Case* it was shown that the defendant was not engaged in any business but had employed the plaintiff to do some plastering in her dwelling-house. Since the work was not connected with employment in a business with a view of gaining a livelihood, the case bears no analogy to this one.

In the *Lennon Case* the work of plaintiff consisted in providing temporary shelter for cattle on a ranch owned by Fezler. It was because of the temporary purpose of the employment in that case that caused the court to refuse to follow it in the later case of *State ex rel. Lundgren* v. *District Court*, supra.

The *Holbrook Case* involved the employment of a painter and decorator by the owner of a hotel to paint and decorate the rooms. The court held that the alleged employee was an independent contractor and for that reason not entitled to compensation, but in the course of the opinion the court said: "No reason can be found for concluding that the owner of a hotel is pursuing his business, within the meaning of the law, when he causes the rooms to be occasionally painted and

decorated, although it is usual to have work of that nature done from time to time." The correct conclusion was undoubtedy reached in that case, by reason of the fact that the alleged employee was an independent contractor. But whether we would agree with the above-quoted statement from the opinion is a question not here involved. It is worthy of note, however, that there is respectable authority reaching a contrary conclusion on facts very similar. (See *National Cast Iron Pipe Co.* v. *Higginbotham*, 216 Ala. 129, 112 South. 734; *Johnson* v. *Ashville Hosiery Co.*, 199 N. C. 38, 153 S. E. 591; *Bosel* v. *Henderson Holding Co.*, 167 Minn. 72, 208 N. W. 421; *Sherlock* v. *Sherlock*, 112 Neb. 797, 201 N. W. 645.)

The *Oliphant Case* involved a statute covering "industrial employment" and excluding those engaged in "agricultural pursuits." Plaintiff was employed by a "retired farmer" to build a new corn-crib on his farm which he had rented. Whether or not the employer collected the rents for the farm did not appear. The court held that the employer was not engaged in any "industrial employment" within the meaning of the Workmen's Compensation Act, and that, if he were engaged in any business, it was that of engaging in an "agricultural pursuit."

The *Packett Case* is analogous to this but is contrary to the holding in the case of *State ex rel. Lundgren* v. *District Court*, supra, and out of harmony with the reasoning in the case of *Lackey* v. *Industrial Commission*, supra, and we decline to follow it.

We are satisfied that the correct conclusion was announced in the *Miller Case*, but we do not feel bound to subscribe to all that is said in the cases cited by it from other jurisdictions. We hold that plaintiff was employed in the usual course of defendant's business, trade or occupation, within the meaning of our Workmen's Compensation Act, and, since the defendant had not elected to carry compensation as provided by that Act, the affirmative defenses pleaded are not available to him. (*Miller* v. *Granite County Power Co.*, supra.)

2. Defendant further contends that the evidence shows that ▆▆▆▆ plaintiff was an independent contractor and, hence, was not an employee of defendant, but that he was in fact an employer within the meaning of our Workmen's Compensation Act, as the terms "employers" and "employees" are defined by sections 2862 and 2863, Revised Codes 1921, as amended by Chapter 121, Laws of 1925.

The evidence bearing upon the nature of plaintiff's employment is to the effect that he was employed by defendant as foreman to direct the work of building the addition to the apartment. Plaintiff testified that defendant told him "that he would not contract the building at all." Both plaintiff and defendant had authority to hire and discharge men. Defendant selected the materials for the building. Plaintiff was paid $10 per day and was to have a commission of two per cent if he would push the work along so that the total cost of the building would not exceed $50,000. Defendant made the plans for the building, was to furnish all the materials, pay the laborers and gave orders when he was around the building. Defendant exercised general supervision over the work and issued orders to the carpenters and other workmen. Defendant actually hired some men and paid all the men by issuing checks to plaintiff. The checks were sometimes issued to J. E. Nelson, contractor.

It appears that the Building Trades Council had a regulation at the time in question to the effect that carpenters hired on individual jobs should receive $2 per day extra, or $11 per day and that defendant employed plaintiff for the purpose of escaping the consequences of this regulation. Plaintiff signed an application for compensation insurance under Plan No. 2 of the Workmen's Compensation Act, in which he represented himself as the employer engaged in contracting. His application was accepted and notices were posted on the premises to that effect. He testified that he did this as the agent of defendant; that defendant paid the premium for the insurance and introduced plaintiff to the

insurance agent as the contractor. Defendant, after the injury to plaintiff, made application for and accepted compensation under Plan No. 3 and posted notices accordingly.

Does this evidence show that plaintiff was an independent contractor? It should be noted at the outset that a contractor, other than an independent contractor, is classed as an employee and workman under our Compensation Act. (Sec. 2863, Revised Codes 1921, as amended by Chap, 121, Laws of 1925.)

Our statute defines an independent contractor as "one who renders service in the course of an occupation, representing the will of his employer only as the result of his work, and not as to the means by which it is accomplished." (Sec. 2890, Rev. Codes 1921.)

In *Shope* v. *City of Billings,* 85 Mont. 302, 278 Pac. 826, we reviewed former cases of this court prescribing tests to be followed in determining whether a person is an independent contractor or a servant, and said: "The vital test in determining whether a person employed to do a certain piece of work is a contractor or a mere servant, is the control over the work which is reserved by the employer. Stated as a general proposition, if the contractor is under the control of the employer he is a servant; if not under such control, he is an independent contractor. (14 R. C. L. 67.) * * * After an exhaustive analysis of the authorities the author of the note in 19 A. L. R. suggests 'the following brief and simple formula which, as regards its essential features, is mainly supported by the authorities, is sufficient for the purpose of a general definition,' and at the same time, he says, is more accurate than most of those discussed in the note: 'An independent contractor is a person employed to perform work on the terms that he is free from the control of the employer as respects the manner in which the details of the work are to be executed.' This definition, in the main, is in harmony with what is said in *Allen* v. *Bear Creek Coal Co.,* supra [43

Mont. 269, 115 Pac. 673], and we agree that as a general definition it is sufficient."

Whether we follow the statutory definition appearing in section 2890, or that announced in the *Shope Case*, the result is the same in this case. The evidence is sufficient to make out a prima facie case that plaintiff was not in fact an independent contractor. He was paid a daily wage and not by the job. He was subject to the will and control of defendant as to the means of accomplishing the work. Under facts very similar, the supreme court of Michigan, in *Opitz* v. *Hoertz*, 194 Mich. 626, 161 N. W. 866, reached the same conclusion.

It is only where the evidence is reasonably susceptible of ▮ but a single inference that the question of whether one is an employee or independent contractor becomes one of law for the court. (*Cinofsky* v. *Industrial Commission*, 290 Ill. 521, 125 N. E. 286; *Gahr* v. *Strout*, 179 Minn. 395, 229 N. W. 340.)

3. Defendant contends that plaintiff, having elected to accept ▮ the provisions of the Workmen's Compensation Act as an employer, is now precluded from asserting that he was in fact an employee and not an independent contractor. This fact was present in the case of *Opitz* v. *Hoertz*, supra, and the court dismissed it by saying: "If the contract between the parties were in doubt or was ambiguous, these facts would be helpful in determining that [what] their agreement was, but no such doubt exists here." The written application of plaintiff for protection under the Workmen's Compensation Act was no doubt prima facie evidence that he bore the relation of employer and independent contractor. (See *Dominic* v. *Faucett*, 245 Mich. 337, 222 N. W. 758; *New Jersey Fidelity & Plate Glass Ins. Co.* v. *Patterson*, 86 Colo. 580, 284 Pac. 334; *Burke* v. *Industrial Commission*, (Utah) 286 Pac. 623.) But the prima facie case thus made was open to explanation. Whether the explanation given by plaintiff was satisfactory was a jury question.

Of course, as between plaintiff and his insurer and the workmen covered by the compensation insurance, their rights

and liabilities would undoubtedly rest upon the relationship held out to the workmen, and as to them plaintiff would undoubtedly be regarded as the employer (see *Burke* v. *Industrial Commission,* supra), and would be estopped from contending otherwise. But this is not necessarily true as between plaintiff and defendant. According to plaintiff's evidence, the only reason plaintiff represented himself as an employer was that he did so at the instance of defendant and for the purpose of securing laborers at $2 per day less than defendant would have been obliged to pay had the true facts been known. According to plaintiff's evidence, plaintiff's election to carry insurance as an employer was in furtherance of a scheme on the part of defendant to secure laborers at $2 per day less than they otherwise would have insisted upon. Defendant is in no situation to urge an estoppel against plaintiff as to acts committed by plaintiff at the instigation and for the benefit of defendant.

Plaintiff's explanation of the circumstances under which he applied for and received compensation insurance must, on motion for nonsuit, be accepted as true. If his explanation be controverted by defendant, the question becomes one of fact for the jury under proper instructions. (21 C. J. 1253.)

4. It is likewise contended by defendant that, since plaintiff obtained compensation insurance representing himself as the employer and since he testified that he did so, as agent of the defendant, he must be held to have done so for all purposes within the meaning of section 7957, Revised Codes 1921. In other words, it is defendant's contention that, according to plaintiff's evidence, defendant did in fact carry insurance through plaintiff as agent, and in consequence that plaintiff's remedy was to accept compensation as afforded by the Compensation Act. This cannot be so. The insurance company could not have been compelled to pay compensation to plaintiff. As to it, plaintiff occupied the position of employer engaged in constructing the apartment, and not as an employee of another. The rights and liabilities of the insur-

ance company were controlled by the contract as actually made with it and would be unaffected by the undisclosed understanding between plaintiff and defendant as to who was the employer.

5. Plaintiff in paragraph 4 of his complaint made certain allegations tending to show that he was an employee of defendant and not an independent contractor. Defendant in his answer "alleges that he has not sufficient information to form a belief as to the allegations of paragraph 4 of said complaint, and therefore denies the same." Plaintiff contends that this denial is not in substantial compliance with section 9137, Revised Codes 1921, and that under the rule announced in *Quickenden* v. *Hulbert,* 83 Mont. 501, 272 Pac. 994, the allegations of paragraph 4 of the complaint must stand admitted. Determination of the question whether this form of denial is good is unnecessary in this case for the following reasons: First: There is sufficient evidence in support of the allegations of paragraph 4 to make out a prima facie case that plaintiff was an employee of defendant and not an independent contractor, so that whether the allegations of paragraph 4 are admitted or denied is immaterial. Second: The answer before us, unlike that in *Quickenden* v. *Hurlbert,* supra, contains, not an admission, but a general denial of all matters and things in the complaint not specifically denied, admitted or qualified. If the special denial of information sufficient to form a belief was insufficient, the general denial would reach the allegations of the paragraph and they would, therefore, be denied and not admitted.

6. Defendant contends that the affirmative defenses pleaded in the answer have not been put in issue by the reply and, hence, stand admitted. The reply to the first affirmative defense is as follows: "Replying to defendant's so-called First Separate Defense contained in his amended answer to plaintiff's complaint, the plaintiff denies each and every affirmative allegation, matter and thing therein contained which is not an admission or denial of allegations of plaintiff's com-

plaint." The other affirmative defenses are denied in the same manner.

This court has held that a denial "of material allegations" of a pleading is bad for uncertainty. (*Burke* v. *Interstate Savings & Loan Assn.*, 25 Mont. 315, 87 Am. St. Rep. 416, 64 Pac. 879.) This was so because such a denial made it necessary, in determining what allegations were traversed, to first decide what allegations were material. Here it is known what the affirmative allegations of the answer are, and, hence, the denial in the reply before us is sufficiently certain, particularly in the absence of a motion to make it more definite and certain. (49 C. J. 337, 338.)

7. As above noted, the fact that plaintiff was injured through the negligence of a fellow-servant is not available to defendant as a defense, defendant not having elected to operate under the Workmen's Compensation Act. Defendant under the circumstances is liable for the negligent acts or omissions of the fellow-servants of plaintiff in the course of their employment. (*Hutchison* v. *Sovrensky*, 267 Mass. 5, 165 N. E. 698; *Diamond* v. *Cleary*, 88 Ind. App. 518, 162 N. E. 372; *Pope* v. *Heywood Bros. & Wakefield Co.*, 221 Mass. 143, 108 N. E. 1058; *Middleton* v. *Texas Power & Light Co.*, (Tex. Civ. App.) 178 S. W. 956; *Cavanaugh* v. *Morton Salt Co.*, 152 Wis. 375, 140 N. W. 53; *Watts* v. *Ohio Valley Elec. Ry. Co.*, 78 W. Va., 144, 88 S. E. 659; *Rockport Coal Co.* v. *Barnard*, 210 Ky. 5, 273 S. W. 533; *Nugent Sand Co.* v. *Howard*, 227 Ky. 91, 11 S. W. (2d) 985; *Nadeau* v. *Caribou Water, Light & Power Co.*, 118 Me. 325, 108 Atl. 190; *Bernabeo* v. *Kaulback*, 226 Mass. 128, 115 N. E. 279.) And the fact that plaintiff was acting as foreman does not prevent those working under him from being his fellow-servants, for the rule is that "employees subject to the control, management or supervision of another employee are his fellow-servants in so far as the responsibility of the master to him for their acts is concerned." (39 C. J. 593.)

There is ample evidence making out a prima facie case of negligence in the construction of the passageway on the part

of plaintiff's fellow-servants in the employ of defendant and for whose negligent acts, under the circumstances presented here, the defendant is responsible.

The court erred in sustaining the motion for nonsuit. The judgment is reversed and the cause remanded for a new trial.

Mr. Chief Justice Callaway and Associate Justices Galen, Ford and Matthews concur.

Rehearing denied April 29, 1931.