MARIANA ROMERO SANTIAGO, Petitioner, *v.* INDUSTRIAL COMMISSION OF PUERTO RICO, ETC., Respondent; JOSÉ RAFAEL TIRADO, Workman.

No. 456.   Argued August 26, 1952.—Decided September 19, 1952.

*Guillermo Bauzá* for petitioner, the only appearing party.

Mr. Justice Pérez Pimentel delivered the opinion of the Court.

On December 13, 1950, workman José Rafael Tirado filed a petition for compensation before the Industrial Commission of Puerto Rico for injuries received when he fell from a palm tree while he harvested coconuts. The petition was filed against Doña Mariana Romero Santiago, uninsured employer, who employed the workman to harvest the coconuts paying him a salary of fifty cents for every hundred coconuts that he harvested. After due procedure, the hearing of the case was held on October 9, 1951 and judgment rendered on November 15, 1951, on the evidence introduced. The Industrial Commission made the following findings of fact:

Mariana Romero Santiago is the wife of Mr. Antonio Pérez Amigo, who owns a farm as his separate property. Doña Mariana acted as agent or representative of her husband in the sale of the coconuts raised therein. The day of

the occurrence Otilio Rodríguez Dones came to buy from Doña Mariana one hundred coconuts and since there were none available, workman Jesús Rivera was sent to look for a coconut harvestman, the latter bringing José Rafael Tirado. When he had harvested about ninety coconuts, he fell from the palm tree suffering several injuries. The Commission also concluded that on that day two persons were in the farm manufacturing charcoal, that half of the profits were given to the employer, "but that the wood was charred sporadically, when enough wood was found . . ."

In view of those conclusions, the Commission decided that the employer used three workmen and that, therefore, she was bound to be insured. Workmen's Compensation Act, Act No. 45 of April 18, 1935, as amended.[1]

After motion for reconsideration was filed, the Industrial Commission "denied" it, and the employer then timely filed this writ of review.

Respondent alleges that the Industrial Commission committed three errors, to wit:

(1) The Industrial Commission erred in holding that Doña Mariana Romero Santiago was an employer and as such should have been insured.

---

[1] Section 2 of said Act provides in its second paragraph that "This Act shall be applicable to all employers who employ three (3) or more workmen or employees covered by this Act, . . ."

This Section reads in its pertinent part as follows:

"Section 2.— (As amended by Act No. 8, approved April 12, 1948 and by Act No. 160, of April 30, 1952.) The provisions of this Act shall be applicable to all such workmen and employees working for the employers to whom the following paragraph refers, as suffer injury, are disabled, or lose their lives by reason of accidents caused by any act or function inherent in their work or employment, when such accidents happen in the course of said work or employment, and as a consequence thereof; or such as suffer disease or death caused by the occupations specified in the following section. Workmen and employees engaged in domestic service and those whose work is casual and is not included in the business, industry, profession, or occupation of their employer, and also such persons as work in their homes, are expressly excepted.

"This Act shall be applicable to all employers who employ three (3)

(2) The Industrial Commission erred in holding that by her acts as found by the Commission, Mariana Romero Santiago bound her husband, Antonio Pérez Amigo, notwithstanding the fact that the farm was his separate property.

(3) The Industrial Commission erred in holding that respondent profited from the coconut business and that therefore she was bound to be insured.

Of the three assignments, the discussion of the first alone is sufficient to decide the case in favor of respondent. Let us see.

██ The Act, as already stated (see note 1), is applicable to all employers who employ three or more workmen *covered* by the Act. Section 2 of said Act provides in its first paragraph that "The provisions of this Act shall be applicable to all such workmen and employees working for the employers to whom the following paragraph refers, [among others to those employing three or more workmen] as suffer injury . . . by reason of accidents caused by any act or function inherent in their work or employment, when such accidents happen in the course of said work or employment, and as a consequence thereof . . . Workmen and employees . . . whose work is casual and is not included in the business, industry, profession, or occupation of their

or more workmen or employees covered by this Act, whatever their wages may be; *Provided,* That such employers as employ one to two workmen or employees may, *motu proprio* and if they deem it advisable, request the Manager of the State Fund to insure them in accordance with the provisions of this Act; *And provided, further,* That this Act shall be applicable to all employers who operate quarries and the business of overland transportation of freight, irrespective of the number of workmen they employ. The Insular Government and the several municipal governments, boards, commissions, authorities, instrumentalities, public corporations, and agencies of The People of Puerto Rico shall be considered as employers, and as such shall come under the provisions of this Act as regards workmen, employees, and officials they use, with the exception of officials appointed by the President of the United States and those elected by the people. Municipal firemen shall be included in the words 'municipal employees' and if they draw no salary, it shall be computed at the rate of six (6) dollars a week for the purpose of collecting the corresponding premium and of paying compensation in case of accident."

employer, . . . are expressly excepted . . ." [2]  Therefore in order that the Act be applicable to an employer he has to have at least, three employees and that all three be "covered by this Act," that is, that none of the three be exempted from the provisions thereof. Therefore, if we find that one of the three workmen involved herein falls within the exemption it is evident that the Act would not apply to Mariana Romero Santiago and that she was not bound to be insured for which reason the decision of the Industrial Commission ordering the Manager of the State Fund to collect from the employer the amount resulting from the liquidation of the case would be erroneous.[3]

We have already seen that by the express provisions of the Act, those workers whose *employment* be of a temporary nature or casual and not comprised in the employer's trade or business are exempted. *De Castro* v. *Industrial Commission*, 72 P.R.R. 622. Therefore we have to determine if the employment, whether it be that of the charcoal-makers or of the coconut harvestman, was accidental or casual and not comprised in the employer's trade or business. If we hold that the employment of the charcoal-makers was accidental or casual and in addition that it was not comprised within

[2] Section 38 of the Act in its first paragraph reads:

"Section 38.—*Workman* or *employee* shall be understood to mean any person in the service of any individual, partnership, or corporation regularly employing workmen included under the provisions of this Act; *Provided,* That workmen and employees engaged in domestic service, those whose work is of a temporary nature and is not included under the business, industry, profession, or occupation, those who work in their homes, and those whose employers are exempt from the obligations imposed by this Act are expressly excluded."

[3] The Industrial Commission held that Mariana Romero Santiago acted as an agent or representative of her husband, but however, it orders the Manager of the State Fund to liquidate the claim and proceed to collect from her as an uninsured employer. Despite the apparent inconsistency of both positions, respondent does not discuss the matter with sufficient details, but she rather refers to it in an indirect manner. This being so, and since the discussion of the first error is sufficient to set aside the decision appealed from, we shall abstain from discussing this problem on the merits.

the trade of the employer it is unnecessary to discuss the same question as regards the coconut harvestman.

■■ By the express provisions of the Act, we repeat, the workman whose labor be incidental or casual and not comprised in the employer's trade or business, is excepted. The question to be determined is therefore, whether the *employment* was casual, and not whether the workman or employee was casual. *Cf. Flynn* v. *Carson*, 42 Ida. 141, 243 P. 818; Schneider, Workmen's Compensation Law, Vol. 1 2d ed., p. 251. Was the employment of the charcoal-makers casual? The Industrial Commission itself sets forth in its decision from which we quote that: "There was no evidence that the alleged employer employed workmen regularly, but that on that day, she employed this workman with the afore-mentioned purpose, and that two other people named Isidro Vázquez Cosme and Sergio Arpén Casillas were also in the farm making charcoal; sharing half of the profits with the owner of the property, but that the wood was charred *sporadically, when enough wood was found;* . . ." (Italics ours.) With these findings of fact, which are amply supported by the evidence we must conclude that the employment of the two charcoal makers was casual and incidental. The Supreme Court of Massachusetts in *In re Gaynor*, 104 N. E. 339, tells us that the word "casual" in "its ordinary signification, as shown by the lexicographers, is something which comes without regularity and is occasional and incidental. Its meaning may be more clearly understood by referring to its antonyms which are 'regular,' 'systematic,' 'periodic' and 'certain.' . . ."

■ We still have to determine if the employment of said charcoal-makers is comprised in the employer's trade or business, for if it is, the workmen are covered by the Act independently of whether the employment was casual and incidental. *De Castro* v. *Industrial Commission, supra; Caca* v. *Woodruff*, 123 N. E. 120 (Ind., 1919). In its deci-

sion, the Industrial Commission states: "Pursuant to the holdings of the Supreme Court of Puerto Rico in *Atiles, Mgr.* v. *Industrial Commission* (63 P.R.R. 573), construing §§ 2, 19 and 38 of the Workmen's Compensation Act in force, those two workmen who were engaged in the manufacture of charcoal sharing half of the profits with petitioner, are workmen within the meaning of the statute." We disagree. The facts in *Atiles, Mgr.* v. *Industrial Commission, supra,* are distinguished from the facts involved herein. There the workman was engaged on Saturdays and Sundays in making charcoal on a farm belonging to the Becerra Pastor brothers. The workman devoted the other days to work on a small farm owned by him. The owners of the farm contributed the wood and the workman made the charcoal, which, once manufactured, was distributed at the ratio of two-thirds for the workman and one-third for the owner of the property. While engaged in such work the workman had an accident. Since at the time of the accident there was no sugar cane, the employers through their agents were operating the industry of the manufacture of charcoal in connection with that of sawing timber, employing several workmen in said industry. Therefore, that was clearly a case of an actual business embodied within the provisions of the statute. Here, however, the manufacture of charcoal was incidental, it was not connected with any other activity of the employer, nor was it her habitual or regular occupation.[4] Schneider, in his afore-cited text, *supra,* at page 235, cites *Marsh* v. *Groner,* 258 Pa. 473, 102 Atl. 127, which reads thus:

---

[4] The Industrial Commission held that the alleged employer was engaged in the business of selling coconuts, although in a small scale, and that said business did not constitute her principal income. From the record it appears that said business rendered a benefit of about $54 each year; that neither respondent nor her husband were engaged in other aspects of agriculture in the small farm of two and a half cuerdas of land which they owned, nor did they spend a substantial part of their time in the operation of said farm.

". . . When one's business is the subject of common speech, no one can be in doubt as to the reference. It would be a very exceptional person—we do not know how to otherwise describe him—who would not understand that the reference is to the *habitual* or *regular* occupation that the party was engaged in with a view to winning a livelihood or some gain. These objects are necessarily implied when one's business is spoken of. Eliminate them, livelihood and gain, and it is no longer business, but amusement, which no one ever confounds with business. What we have said as to the popular understanding of the word business is just what Webster defines it, ' Some particular occupation or employment habitually engaged in for livelihood or gain.' " (Italics ours.)

The rulings of the state courts are almost unanimous in the sense that the activities in which a person engages should be carried out habitually and regularly in order to constitute a business. See *State* v. *District Court*, 138 Minn. 103, 164 N. W. 366, to that effect where it is stated that the word business "has the same general significance with respect to the work or calling of the employer as the words 'trade, profession, or occupation,' and refers to the employer's ordinary vocation, and not to every occasional, incidental, or insignificant work he may have to do." See also *Osttie* v. *H. F. Dirks & Son*, 248 N. W. 283; *Dial* v. *Coleman's Lunch*, 251 N. W. 33; *Glidden Rural Elec. Co-op* v. *Iowa Employ. Sec. Com'n*, 20 N. W. 2d 435; *State* v. *District Court*, 164 N. W. 366; *Kaplan* v. *Gaskil*, 187 N. W. 943; Annotation 50 A.L.R. 1176.

Although it is true that the employer earned profits from said activity, she did not engage in it habitually or regularly but it happened "sporadically, when enough wood was found."

Since that error was committed, it is unnecessary to consider the other errors raised by petitioner.

The decision of the Industrial Commission must be reversed and the petition filed by the workman denied.

Mr. Chief Justice Todd, Jr., did not participate herein.