JAKE KAPLAN, APPELLANT, v. WILLIAM M. GASKILL, APPELLEE.

FILED APRIL 19, 1922.    No. 22503.

1. **Master and Servant: WORKMEN'S COMPENSATION ACT: CASUAL EMPLOYMENT.** Where a person employed another to do some repair work and remodeling on his store building, which work it was contemplated would last ten days or two weeks, and when it was contemplated by the parties that the employee should continue working for such person in the repairing of a fence and building

of additional garages and in the erection of another building, which
work it was expected would last throughout the summer, and where
it was agreed that the employee should receive 75 cents an hour
for seven and one-half hours a day, and should work five days a
week, *held*, that such employment was not casual, within the mean-
ing of that term as used in the workmen's compensation law.

2. ———: ———: APPLICATION. The workmen's compensation law
does not, as is manifest from its express terms, cover all labor,
but only such labor as is performed in the usual course of some
regular trade, business, profession or occupation of the employer.

3. ———: ———: OCCUPATION. Where a person, engaged in the
general business of buying and selling junk and dealing in second-
hand automobiles, owns a small store building and two or three
houses, which he rents to tenants, *held*, that the labor or services,
which were required to be furnished or performed by him in the
handling of and caring for those properties, does not amount to
a regular business or occupation, within the meaning of the work-
men's compensation law.

4. ———: ———: ———. The work rendered for such person by
an employee in the repair of one of such buildings is not work
which is within the usual course of any regular business or occu-
pation of such person, and the employee, in the performance of
that work, does not come within the operation of the statute men-
tioned.

5. ———: ———: ———. The business occupations, referred to in
the act, are the habitual or regular occupations that a person is
engaged in with a view to winning a livelihood or gain.

APPEAL from the district court for Douglas county:
CARROLL O. STAUFFER, JUDGE. *Reversed and dismissed.*

*J. E. Von Dorn*, for appellant.

*R. B. Hasselquist*, contra.

Heard before DEAN, ROSE, DAY and FLANSBURG, JJ.

FLANSBURG, J.

This was an action under the workmen's compensation
law. An award was granted to the employee, Gaskill, both
at the hearing before the compensation commissioner, and
also in the proceeding, later instituted, in the district
court. From the decree in the district court, the employer,
Kaplan, appeals.

Kaplan v. Gaskill.

The questions of law presented are whether or not the employment was "casual," and whether or not it was an employment in the usual course of "the trade, business, profession or occupation" of the employer.

The evidence in behalf of the employee is to the effect that Kaplan, the employer, was engaged in the business of buying and selling junk and dealing in second-hand automobiles, and that he owned two or three houses and a small store building. His wife also owned one residence property. All of these properties, except one house, in which Kaplan and his wife lived, were occupied by tenants. In the middle of April, 1921, Mr. Kaplan employed Gaskill to work for him. He told Gaskill that he had some repair work and remodeling to do on the store building, and that he intended, later, to build or repair a fence, build some additional garages, and, should he be able to purchase a certain lot, expected to erect another store building. It was contemplated that the work which they were to immediately enter upon on the store building, being remodeling and repair work, would last ten days or two weeks. Mr. Gaskill, who was otherwise employed, in the early mornings, as a janitor, the testimony in his behalf shows, agreed to work for Kaplan at 75 cents an hour, seven and one-half hours a day and five days a week; Mr. Kaplan not desiring work done for him on Saturday, as that was the day which he observed as the Sabbath. Gaskill began work immediately, on April 19, and the work on the store building was practically completed on the 2d of May. On that day Kaplan asked that Gaskill should return the next day and assist in moving an ice box, saying that he wished Gaskill to bring some crowbars, and that he would call for him the next morning with his truck. The next morning they met, as arranged, and drove to the store building. The work of moving the refrigerator and of repairing damage to the floor, which occurred as a result of that work, lasted until noon. During that work, a splinter entered Gaskill's thumb. An infection later followed and caused a permanent injury.

The above testimony is not without conflict, but, since the evidence is sufficient to support such a state of facts, the judgment of the district court is decisive of those issues in favor of the employee, so far as the appeal in this case is concerned, for the judgment of the trial court has the same effect and binding force as the verdict of a jury.

The two legal defenses, that the employee was engaged in casual employment and was acting outside of the usual course of the business of his employer, are, under the statute as it stood prior to the 1921 amendment, defenses which are distinct and independent of one another, and must be considered separately. *Petrow & Giannou v. Shewan*, p. 466, *post*.

It does not appear that the employment was casual. That question is to be determined largely from the contract entered into between the parties. *Western Union Telegraph Co. v. Hickman*, 248 Fed. 899; *Oliphant v. Hawkinson*, 192 Ia. 1259. By that contract it was contemplated that the employee was to be employed continuously at a certain rate per hour, and for certain hours and days of the week, and for a period which might last practically the entire summer. The work was to be of a sufficient duration to make it entirely practicable for the employer to take out insurance to protect both himself and his employee, or to serve and post notices of an election, on his part, to be governed by part I of the workmen's compensation act. One of the reasons that the casual employee was excepted from the operation of the compensation law was because of the impracticability of requiring the employer to take out insurance, or to take the necessary steps to reject the act in each individual instance of such employment. Where it is contemplated by the parties, at the time of entering into their agreement, that the employment will last ten days or two weeks, and may and probably will continue several months, it certainly cannot be said to be a casual employment. In California the legislature has seen fit to declare that employment which continues for more than ten days shall not be considered casual. *Ford*

*v. Industrial Accident Commission*, 200 Pac. (Cal. App.) 667.

The decisions of this court and of other courts, under circumstances where the employment is one which is contemplated to continue, as it does in this case, have held such employments to be regular, and not casual. *Nedela v. Mares Auto Co.*, 106 Neb. 883; *Thompson v. Twiss*, 90 Conn. 444; *Scott v. Payne Bros.*, 85 N. J. Law, 446; *Schaeffer v. De Grottola*, 85 N. J. Law, 444.

The next question presented is whether or not the employment was in the usual course of the regular trade, business, profession, occupation or vocation of such employer. The statute provides that the act "shall apply * * * to every employer in this state employing one or more employees, in the *regular* trade, business, profession or vocation of such employer" (Laws 1917, ch. 85, sec. 1), and further provides that the act "shall not be construed to include any person whose employment * * * is not in the *usual* course of the trade, business, profession or occupation of his employer" (Laws 1917, ch. 85, sec. 4, subd. 3).

It is argued that the act must be given a liberal construction, and to this we readily accede. But, as said in *Ray v. School District of Lincoln*, 105 Neb. 456, 461: "We have repeatedly given the act, as to the classes of workers brought within it, a liberal construction, but the rule, allowing a liberal construction of a statute, does not warrant us in overriding its terms in order to widen the remedy or bring about objects or results not within its expressed intent."

The act by its terms is confined to employees in the various kinds of business occupations, whenever such employees are engaged in performing the usual services pertaining to that particular business or vocation.

The fact that the employer, in this instance, was engaged in the business of buying and selling junk and in dealing in second-hand automobiles has no controlling influence upon the question of whether or not he was engaged in the *regular business* or *vocation* of renting houses.

The act does not contemplate that a person can be engaged in only one regular business. He may be engaged in several. The question, then, of whether or not he was engaged in a regular business occupation in the holding and handling of the properties in question, and whether or not the employee was engaged in the usual course of the duties which were within the scope of that business, must be determined entirely aside from the question of whether or not the employer was engaged in any other kind or nature of business, as well as aside from the question of whether the employment was casual. The compensation act was not intended to impose a charge upon the individual employer, but upon the industry or business or vocation in which he was engaged, on the theory that the industry could bear the loss resulting from personal injuries to its employees, and that the burden could be passed on to the patrons of that industry by charging up such losses to operating expense. The law was not intended to cover all labor, but, as is manifest from its express terms, only labor performed in the *usual* course of some *regular* business calling. In determining what was meant by the terms, regular trade, business, profession or vocation, this underlying principle of the law should be kept in mind. The terms, trade, business, profession, vocation or occupation, all refer to business occupations, of one nature or another. It is not everything in which a person may happen to be employed, even though the undertaking may be carried on for profit, that may be said to be a business, vocation or occupation, within the meaning of the terms as used in the statute. Those terms imply a continuous or habitual course of dealing in certain transactions and a dealing to a sufficient extent as to so employ work and labor and service in the conducting of it that it can be said to be a regular occupation or business. As to what constitutes a regular business in any given case must of course depend upon the particular facts and circumstances in that case. No arbitrary or definite rule can be laid down which would describe the boundary between the doing of certain infre-

quent or isolated transactions for profit and the continuous and habitual carrying on of such transactions to such an extent as to amount to a regular business. In the interpretation of this statute it seems to us that we must take the common and ordinary meaning of those terms as being the sense in whch they were used by the legislature.

In the case of *Marsh v. Groner*, 258 Pa. St. 473, L. R. A. 1918F, 213, the court, referring to the meaning of the word "business," as used in the workmen's compensation law in that state, said (p. 477) :

"What gives rise to the question is the indefiniteness and want of precision of meaning of the word 'business' as it occurs in the act. It is a word which embraces a wide variety of subjects, and being without a technical or precise meaning, excluding any other, it may convey an entirely different meaning in one connection from what it imports when used in another. In such cases when, as here, no help can be derived from the context, and none from the use of the same word in other sections of the act, the interpreter has no other recourse than to the presumption that the word was used in the popular sense, if that be found agreeable, that is, not contradictory to the object and intention of the lawmaker.

"Statutes are presumed to employ words in their popular sense, and when the words used are susceptible of more than one meaning, the popular meaning will prevail. Where the meaning involves no absurdity and is not in conflict with the other parts of the act, it is the only one that can be presumed to have been intended and there is no room for construction. Cooley, Constitutional Limitations, p. 68. There are few words more current in our speech than the word 'business'; few that include a greater variety of subjects and yet none which, in popular speech, has greater or more marked singleness in denotement. When one's business is the subject of common speech, no one can be in doubt as to the reference. It would be a very exceptional person—we do not know how to otherwise describe him—who would not understand that the reference

is to the habitual or regular occupation that the party was engaged in with a view to winning a livelihood or some gain. These objects are necessarily implied when one's business is spoken of. * * * What we have said as to the popular understanding of the word 'business' is just what Webster defines it: 'Some particular occupation or employment habitually engaged in for livelihood or gain.' "

Merely holding property and keeping it in order, though it is rented to another and renders an income, can hardly be said, without straining the meaning of the term, to constitute a regular business on the part of the owner. There are different characters of properties which are income-producing and which need more or less care and attention in their handling, and yet the mere holding of them, which does not require a substantial or continuous or habitual rendition of service, can hardly be said to constitute a business, as that term is used in the statute. Though the holding of a single property and renting it to another, so as to derive an income therefrom, would not constitute a business, still it is conceivable that a person may be so engaged in acquiring and holding numerous properties that the service required in handling and caring for them may become so substantial as to amount to a regular business.

Our compensation laws in this country have, to a large degree, been patterned after the compensation laws in England. There it is held that the maintaining and renting of several residence properties cannot be held to be a business within the contemplation of the compensation law. In the case of *Bargewell v. Daniel,* 98 L. T. R. (Eng.) 257, a woman managed eight houses. She owned five of them and for managing the other three received half of the rent. She had no regular business or vocation and supported herself on the income from these properties thus derived. She employed a person to mend the roof of one of the houses and in performing that work he was injured. It was conceded that he was a casual employee, but, under

Kaplan v. Gaskill.

the English act, the mere fact that he was a casual employee did not exclude him from the operation of the law, unless it further should be found that he was not employed in the course of the trade or business of the employer. It was held that he was not employed in connection with what is generally known as a trade or business. The court said that the act "provides that a workman within the act does not include a person whose employment is of a casual nature, and who is employed otherwise than for the purposes of the employer's trade or business. The intention was that the act should not apply in such a case to the ordinary owner of property who was not carrying on any trade or business." One of the other justices in that case in his opinion said: "I think the interest which the defendant had in this property was such that for the purposes of this case we must treat her as having all the rights of the owner of these houses, and under the circumstances of this case I think it would be putting an unnatural meaning on the act to say she was carrying on any trade or business."

In the case of *State v. District Court*, 138 Minn. 103, the defendant owned a farm, which he rented to a tenant. The barn on the farm had burned and it was necessary to provide temporary shelter for the tenant's live stock. The defendant employed a carpenter to build a shed upon the farm, and it was held that the employee engaged in that work was not engaged in the trade, profession or occupation of the defendant, the court saying (p. 105) : "Assuming that the lease obligated defendant to erect a shelter for his tenant's stock, or that he had voluntarily agreed to do so, we may say, in a certain sense, that the erection became his business or duty. But that cannot be the meaning of the word 'business' in this statute. It must have the same general significance with respect to the work or calling of the employer as the words trade, profession, or occupation, hence must refer to the employer's ordinary vocation and not to every occasional, incidental, or insignificant work he may have to do. When we speak of a person's trade or profession we generally refer to that

branch of the world's activities wherein he expends his usual everyday efforts to gain a livelihood. There is no evidence that defendant made it a part of his calling to rent out farms or erect buildings, either temporary structures or permanent. For all that appears this was the only farm he owned, and it may have been of such small area and value that its renting and care could not properly be classified either as a business or occupation."

In a similar case, *Oliphant v. Hawkinson, supra,* the defendant was a retired farmer and had rented his farm to a tenant, who occupied and operated it. Defendant employed a carpenter to build a new corn-crib upon the premises. It was held that the carpenter so employed was not engaged in any trade or business of the employer, the court saying that the defendant "had no trade or business within the meaning of this act. Because he owned the farm and leased it did not bring him within the class contemplated by this statute as an employer."

In the case of *Lauzier v. Industrial Accident Commission,* 43 Cal. App. 725, the defendant owned four small frame houses which she rented to tenants. She employed a carpenter to repair the roof of one of the houses and during the performance of that work he was injured. The question was whether or not the owning and renting of the four houses constituted a "business," within the meaning of the workmen's compensation law, and it was held that it did not. In *Ford v. Industrial Accident Commission, supra,* it was held that an owner who lets his house for profit, and at irregular intervals, when demanded, has labor performed in repair thereof, is not engaged in the prosecution of a trade or business, within the meaning of the act.

It cannot be questioned that a person who is employed to repair or remodel the family residence of another is not, in that employment, engaged in the usual course of any regular business or occupation of the employer, within the meaning of those terms as used in such acts. See *Marsh v.*

· *Groner, supra,* and, in general, extended note, 15 A. L. R. 735.

The purport of the decisions, above discussed, is that the mere owning of a house, maintaining it and keeping it in repair and renting it, so that it may produce an income, is not sufficient to constitute a business; nor does the fact that a person owns and rents more than one house necessarily constitute a business, but such transactions at most could only amount to a regular business, within the meaning of the law, when they are carried on to such an extent as to require a substantial and habitual devotion of time and labor to their management and operation. In the case of *Davis v. Industrial Commission,* 297 Ill. 29, 15 A. L. R. 732, where a person owned a three-story building, 45 feet high, which contained 15 separate living apartments, and, as well, owned other buildings, from all of which he derived an income, he was recognized as being, in that connection, engaged in business, within the meaning of the law.

In the case before us Kaplan owned a small store building and two or three houses. His wife owned a residence, and in one of these residences—it does not appear in which—the defendant and his wife resided. The fact that Kaplan kept these properties in repair, and the fact that he rented them, so that they might produce an income, does not, to our mind, show that he was so engaged in the acquiring and renting of properties, and in the furnishing or performance of labor in respect to them, as to be considered engaged in a regular business in that connection, within the meaning of the terms as used in the workmen's compensation law. His time was substantially employed in the business of handling junk and dealing in second-hand automobiles, and what he did with regard to the handling of and caring for the several private properties was purely incidental to his investment, and not sufficient in extent to constitute a regular business.

It is therefore our conclusion that the judgment of the

lower court must be reversed and the case dismissed.

REVERSED AND DISMISSED.