DANCY *v.* ABRAHAM BROS. PACKING CO. *et al.*

(*Nashville,* December Term, 1936.)

Opinion filed February 13, 1937.

JOSEPH NORVILLE, of Memphis, for plaintiff in error.

ALBERT G. RILEY, of Memphis, for defendants in error.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

In this case petitioner, who accidentally lost an eye while doing some work for the packing company, was denied an award by the trial court on the ground that he was, at the time, a casual employee only.

When injured, he was engaged in erecting a small auxiliary structure, described as a hydrant house, built around, to protect from freezing, the control valves of an automatic sprinkler system, which had previously been installed to protect the plant from fire. At the moment he was cutting a sheet of tin, a piece of which flew up and struck his eye.

His regular occupation was that of a carpenter, doing odd jobs, for first one and then another employer. He owned and worked with his own tools, and was paid 30 cents an hour. He was injured on the 24th of May. He testified that he had first applied to the packing company for work in March, when they had nothing for him, but

he states that "later the chief engineer, Mr. George Crumby, sent for him and told him they had some work for him;" that he then went to work and worked from March 22nd to April 4th; that at this time he was building, or enlarging, a house used for curing hides, which was a part of the business of the packing company; that at this time he also did some work on a salt bin and a coal bin, and made some minor repairs about the office; that between April 4th and May 13th he worked for another concern, doing carpenter work; that he came to work again for the Abraham Company May 13th, and between this date and May 24th, when injured, he did small jobs on a door and window in the office and on a door to a refrigerator room. From this, he was put on the work he was doing when injured.

█ Now these facts, as will be seen, relate mainly to the trade or occupation of the employee, which was that of carpenter. It may be conceded that they show that he was engaged "in the usual course" of his trade or occupation. But this is not determinative. Under our act, Code, section 6856(b), the test is whether or not the workman was employed when injured "in the usual course of trade, business, profession or occupation of the employer."

Can the carpenter work of repairing these doors, windows, salt or coal bins, or inclosures of the control valves of the sprinkler system, be said to have been in the usual course of this employer's trade, business, or occupation? Was not this work rather of an occasional, now and then, exigency, unusual nature? The "occupation" of the packing company was not carpentering, constructing, or repairing.

█ It does not appear that this packing company

maintained a force of carpenters for such work, or was prepared by or through its regular employees to perform it. The company did not maintain any mechanical department for the purpose of performing repair or construction work in connection with the operation of its plant. But, when and as the need arose, from time to time, acting through its chief engineer, a workman was called in for such purposes. The odd carpenter job or jobs the occasion appeared to demand being accomplished, the workman called in to perform this work would be released.

It is argued for petitioner that, while the occupation or business of the packing company was that of packers of meat and curing of hides, etc., it was essential to the performance of its business that it first construct and then maintain, in usable condition, its buildings and incidentally, here in point, its sprinkler system, and that this was, therefore, a part of its regular and usual business, in due and usual course.

The holding in the *Canning Case,* 283 Mass., 196, 186 N. E., 243, 244, is relied on to support this view. It appears to do so. However, the reported opinion is short, the greater part being devoted to a discussion of matters of local procedure not relevant here. A very brief statement of the facts is given. The opinion contains no reasoning, but the conclusion only that the employee was not within the excluded casual class and that "that finding was warranted, if not required, by *Shannon's Case,* 274 Mass., 92, 174 N. E., 235." Turning to *Shannon's Case,* we find the explanation for what appears to be a ruling against the great weight of authority.

The facts recited in the opinion in that case show that the employer was a manufacturer of cotton goods and

was having installed a humidifier and new feed pipes in connection therewith, and it was on this new construction work that the workman was engaged when injured. But this significant and, we think, determinative fact was found, "that the employer maintained a mechanical department for the purpose of performing work in connection with the operation of its plant; that the claimant was employed in this department," etc. And, in concluding the opinion, the court said, "The employer maintained a mechanical department, and the construction of the new feed pipes was, as found by the single member and by the board, a necessary part of the business for which the corporation was chartered. The employer by its own employees, prepared and maintained its plant, and by the same means undertook the work of installing the new humidifier. This could be found to be within its usual course of trade or business."

Now this fact of controlling importance, as we see it, is not mentioned in the *Canning Case* opinion. No reference is made to the point, two or three times emphasized in the *Shannon Case,* that the employer regularly maintained a mechanical department for the doing of its repair and construction work, and that this workman was a regular employee in this department. It seems probable that, in later deciding the *Canning Case,* the point was overlooked. In view of this analysis of the holdings of the Massachusetts Supreme Court, we are not of opinion that the position of the appellant herein is well supported thereby.

It is urged that the company's employment regularly of a chief engineer, also described in the record as chief of maintenance, through whom the company customarily acted in engaging and directing this petitioner, and other

occasional workmen, showed an undertaking or assumption by the company of the work of maintenance and repair as a regular part of its business.

However plausible this argument, we are not satisfied to give the language of our Tennessee statute such a construction. To do so would be to fail to give required weight to the word "usual," qualifying "course of trade," etc. In some of the statutes, this word is omitted. Its significance has been given determinative emphasis by the California Supreme Court as hereinafter shown. In some statutes the word "regular" appears instead of "usual" and is properly given like effect, being in this context practically synonymous.

While there appears to be some conflict in the decisions, even when construing similar language, we think the weight of authority supports the view we take.

*Oilmen's Reciprocal Association* v. *Gilleland,* 291 S. W., 197, 201, was decided by the Commission of Appeals, which, we are advised, is an adjunct of the Supreme Court of Texas.

In that case a bricklayer was employed by a laundry company to wall up a pit near two wells in which pumping equipment for the laundry was to be installed. The court reversed the judgments of the district court and the Court of Civil Appeals (285 S. W., 648), holding, in a well-reasoned opinion, that the bricklayer was not engaged "in the usual course of trade, business, profession or occupation of his employer." After reviewing several cases supporting its conclusion, the court quotes from a contrary holding by the Appellate Court of Indiana (*Caca* v. *Woodruff,* 70 Ind. App., 93, 123 N. E., 120) as follows:

"The appellant was engaged in the milling business,

the proper conduct of which required a building and machinery. Buildings and machinery used in such a business at times need to have additions and repairs made thereto. These additions and repairs must be expected and provided for. They are necessary in any business such as that in which appellant is engaged. The making of repairs was a necessary part of his business which he was required to anticipate when the necessity of his business demanded, or his convenience dictated.''

The Texas court then says: ''The above quotation is representative of the views of those courts sustaining an award like the one in the instant case. Under a holding of this kind, any employment which would be helpful or essential to a business, however infrequently such necessity might arise, would be compensable. With all due deference to the courts upholding this view, we do not think an occasional situation is one arising in the 'usual course' of a business. Practically every employment is for a purpose essential to the business of the employer. Otherwise, no such employment would exist. Consequently, such a construction practically eliminates this word 'usual' from the statute. This should not be done by the courts. We think, in a few of the states, the courts themselves, by judicial construction, have done what the Supreme Court of California refused to do. The history of this matter in that state is quite interesting. It is given in the brief filed in the Court of Civil Appeals by plaintiff in error as follows:

'' 'A review of the California decisions would illustrate the contention of appellant that the use of the word ''usual'' puts a very different meaning on the definition of the employee than if it were omitted. At the time that court decided *Maryland Casualty Co.* v. *Pillsbury,* 172

Cal., 748, 158 P., 1031; *London, etc., Co.* v. *Ind. Acc. Comm.* (173 Cal., 642), 161 P., 2; *La Grande Laundry Co.* v. *Pillsbury* (173 Cal., 777), 161 P., 968 (988) ; and *Carter* v. *Ind. Acc. Comm.* (34 Col. App., 739), 168 P., 1065, . . . the statute provided that the employee must sustain his injury in the usual course of employment. In all of these cases the contention of appellant is sustained. . . . Then the Legislature of California amended the act so as to omit the word ''usual,'' leaving it read that the injury must be received in the course of the employee's employment. Immediately the court put a different construction upon the statute and held in *Globe Ind. Co.* v. *Ind. Acc. Comm.* (45 Cal. App., 328), 187 P., 452, that a carpenter employed by a partnership to build a silo on its dairy farm, who died from a fracture of the skull caused by the falling of a scaffold, was in the course of the business of the employer at the time of his death.'

''It is our view that the California court adopted the proper policy and refused to ignore this word 'usual' or give to it any unusual meaning. The ordinary meaning of the word 'usual' is given by Webster's New International Dictionary as follows: 'Such as is in common use; such as occurs in ordinary practice, or in the ordinary course of events; customary; ordinary, habitual; common.'

''The same dictionary tells us that the word is synonymous with 'accustomed, common, wonted, ordinary, regular.' It goes without saying that walling up a pit with brick is not in the ordinary course of the laundry business.

''In one word, it is clear that Gilleland was a bricklayer. Therefore he was unquestionably engaged in the

usual course of his own business when killed. But, it is equally clear that he was not, in any sense, in the usual course of his employer's business at that time.''

In several jurisdictions, construing statutes similar to ours, it is held that where an establishment maintains a regular department for doing construction work and keeping the plant in repair that one employed in such department is engaged in the usual business of the company, and when injured is entitled to compensation. *Shannon's Case,* 274 Mass., 92, 174 N. E., 235; *Callihan* v. *Montgomery, infra.* But this rule has no application in the case under consideration, since the packing company maintains no such department, but merely employs a superintendent or engineer to look after such matters, and who, when repairs are needed, goes outside of the organization and employs first one and then another to make the necessary repairs.

The Supreme Court of Pennsylvania, in *Callihan* v. *Montgomery,* 272 Pa., 56, 115 A., 889, 894, in discussing casual employment, had this to say:

''The casual employment of one, for the performance of an odd job, may occur in conducting a business and still not be within its regular course. For instance, emergency repair work on a machine used in the operation of a business can always be said to take place in the course of that business, as all machinery, at some time or other, is bound to need repair; but such work, if not of a kind usually performed by or under the control of the person conducting the business, would be outside the regular course thereof. The Legislature evidently intended, by the use of the words 'regular course,' to give them some definite significance, and the most natural meaning is that they refer to the normal operations which

regularly constitute the business in question, excluding incidental or occasional operations arising out of the transaction of that business, such as now and again repairing the premises, appliances or machinery used therein. While repair work may be considered an important incident to any business using machinery, and, in some cases, may enter into the customary operatiòns of such a business (for example, when men are engaged as regular employees for the purpose of keeping the machinery in order), yet the repairs we are here considering were no part of the regular course of the business conducted by defendant, which is producing oil; they represent merely an odd job, incidental to that business, but not part of the work ordinarily done by or under the control of the employer in this particular case.''

Since, in the instant case, Crumby was regularly employed as engineer and maintenance man it might be that if, while so engaged, he were injured he would be entitled to compensation. That question is not before us and we do not decide it. But if, as agent for the packing company, he hires A today to mow the grass, B tomorrow to paint the roof, and C the next day to box some pipes, that does not constitute A, B, and C employees in the usual course of trade, business, profession, or occupation of the packing company.

While the facts here appearing are not identical, the previous holdings of this court support in principle the views herein expressed. *Gibbons* v. *Roller Estates, Inc.*, 163 Tenn., 373, 43 S. W. (2d), 198; *Murphy* v. *Gaylord*, 160 Tenn., 660, 28 S. W. (2d), 348; and see *Hollbrook* v. *Olymphia Hotel Co.*, 200 Mich., 597, 166 N. W., 876; *Packett* v. *Moretown Creamery Co.*, 91 Vt., 97, 99 A., 638, L. R. A. 1918F., 173; *Oliphant* v. *Hawkinson*, 192 Iowa, 1259, 183 N. W., 805, 33 A. L. R., 1433; *State ex rel.*

*Lennon* v. *District Court of Douglas County,* 138 Minn., 103, 164 N. W., 366; *Kaplan* v. *Gaskill,* 108 Neb., 455; 187 N. W., 943; *Sturman* v. *Industrial Commission of Wisconsin,* 203 Wis., 190, 232 N. W., 864, 234 N. W., 494; 71 C. J., 444.

Every case must, of course, be tested by its own facts and the line of demarcation is frequently narrow. However, for the reasons stated, we are constrained to hold that the petition is not within the provisions of the act. The judgment is affirmed.

GREEN, C. J., and McKINNEY, J., concur.

COOK, J., nonconcurs.

### DISSENTING OPINION.

MR. JUSTICE DEHAVEN delivered the dissenting opinion.

This is a workmen's compensation case in which there was a judgment for the employer and its insurance carrier. The single question presented is whether the petitioner, at the time of his injury, was a casual employee of the defendant Abraham Bros. Packing Company.

The proof in the case shows that Abraham Bros. Packing Company is a corporation engaged in the business of slaughtering cattle and selling meat and by-products. The company owns, operates, and controls the grounds, buildings, plant, and accessories located at Hollywood, Memphis, Tenn. The Company employs a chief engineer and a chief maintenance man. Both of these positions were held by George Crumby. The company had installed a new sprinkler system for protection

against fire. Under a city ordinance, it became necessary to place housing around the valves of the sprinkler system to prevent them from freezing.

Petitioner is a carpenter. He was first employed by the packing company on March 22, 1935, at 30 cents per hour, and was put to work on a hide house for the curing of hides, worked on a salt bin and on a coal bin, which held the coal used for generating steam for operating the entire plant, and did some general repair work about the plant. He worked at the plant, under the supervision of the chief of maintenance, through April 4, 1935.

On May 13, 1935, the chief of maintenance again sent for petitioner, and he was put to work building a door to the refrigerator room used for curing hides, and made some alterations and changes in the office of the plant. He was then put to work on building the housing over the valves of the sprinkler system. While engaged in the latter work, on May 24, 1935, he was struck in the right eye by a piece of tin, on which he was working, and injured so that he lost the sight of the eye. He had previous to his employment by defendant lost the sight of his left eye.

The company had a chief of maintenance who employed petitioner, and under whose orders and supervision petitioner worked. It is admitted by the chief of maintenance that the work done by petitioner came under the head of maintenance. It cannot be successfully maintained that because petitioner was not engaged in the slaughtering of cattle, or the sale of meat, he was not employed in the usual course of the business of the company. It was a part of the company's business to keep its plant in such condition that it could be operated efficiently. A plant such as the company maintains is a

complex affair, to the necessary operation of which many and varied activities are essential, and which, taken together, constitute its trade or business.

Section 6852 of the Code (Workmen's Compensation Law), in paragraph (b) thereof, provides, among other things:

" 'Employee' shall include every person, including a minor, in the service of an employer, as 'employer' is defined in paragraph (a) above, under any contract of hire, apprenticeship, written or implied."

Under this definition Dancy was, unquestionably, an employee of Abraham Bros. Packing Company. He worked under the supervision and instructions of the chief of maintenance. He was not an independent contractor. He worked on a wage scale of 30 cents an hour and was paid weekly for the time he had made.

Section 6856 of the Code provides:

"This chapter shall not apply to: . . .

"(b) Any person whose employment at the time of injury is casual, that is, one who is not employed in the usual course of trade, business, profession, or occupation of the employer."

Two things only are necessary to the recovery of compensation: (1) That the claimant be an employee at the time of injury; and (2) that he be employed, at such time, in the usual course of trade, business, etc., of the employer.

The length of time of the employment is not material. It makes not the slightest difference whether Dancy was employed for one hour, six months, or a year. One need not be regularly employed in order to be entitled to the benefits of the statute, if at the time of his injury he was engaged in the usual course of trade or business of the

employer. This court has held that the employee comes within the protection of the statute although the employment be temporary as distinguished from regular employment. *Parks* v. *E. M. Carmell Co.*, 168 Tenn., 385, 79 S. W. (2d), 285; *Gibbons* v. *Roller Estates, Inc.*, 163 Tenn., 373, 43 S. W. (2d), 198.

The superintendent of the plant testified that defendant conducts a large business, in excess of a million dollars a year; that whenever it was necessary to have carpentry work done, they employed a carpenter; that such matters were under Mr. Crumby, the chief engineer of the plant. The majority opinion stresses the fact that the company did not maintain a department "for the purpose of performing repair or construction work in connection with the operation of its plant." Whether the company had such a department or not is immaterial, if Dancy was an employee, and at the time of his injury was employed in the usual course of trade of his employer. However, I think it did have such a department. Crumby was chief of maintenance, and, while Dancy was working, he had one employee under him. The majority opinion rather carries the implication that for such department to exist the company would have to have "regular employees" to perform the work. It is stated: "It does not appear that this Packing Company maintained a force of carpenters for such work, or was prepared by or through its regular employees to perform it." This, I think, erroneously brings into consideration the element of time as regards the length of service of the employee. The department could exist if persons were engaged by the superintendent of maintenance "under a contract of hire" to perform the work as and when needed.

There is a conflict in the authorities from other jurisdictions on the question here presented. This conflict arises, in the main, from different interpretations of the word "casual" appearing in the various compensation acts, and from the differences between the acts themselves. In Tennessee, however, the word "casual" is defined by the act itself and cannot be given a different definition by the courts.

For the reasons stated, I feel constrained to dissent from the opinion of the majority of the court.

## On Petition to Rehear.

Mr. Justice Chambliss delivered the opinion on petition to rehear.

In a petition to rehear, counsel for Dancy vigorously present two propositions, (1) that this court erroneously applied, as a test of the casual nature of Dancy's employment, the "regularity" of his employment at the time; and (2) that the regularity of the employment of the defendant corporation's representative, who had engaged Dancy, should be held to bring Dancy within the law.

The second proposition was fully considered and rejected in the original opinion. In employing a chief engineer, in charge of maintenance generally, whose duty it was to engage a carpenter, or other mechanic, as occasion from time to time required, the company did not extend its usual course of business, or occupation, to the doing of carpenter, or like work.

As to the first proposition, counsel misconstrues the opinion. It was not intended to hold, and we think it was not indicated by the language used, that the regu-

larity, or length of time of the employment of Dancy, was determinative; it is the regularity of the employer's exercise of a given employment that is important, not the regularity of the employee's engagement therein. If the employer "regularly" employs employees in a given class of work, this may be evidence that such work is in the usual course of such an employer's trade, business, or occupation. This is the meaning, we think plain, of the use in the following paragraph of the words "regular employees:"

"It does not appear that this Packing Company maintained a force of carpenters for such work, or was prepared by or through its regular employees to perform it. The Company did not maintain any mechanical department for the purpose of performing repairs or construction work in connection with the operation of its plant. But, when and as the need arose, from time to time, acting through its chief engineer, a workman was called in for such purpose. The odd carpenter job or jobs the occasion appeared to demand being accomplished, the workman called in to perform the work would be released."

This case was given unusually thorough consideration, indicated by the fact that all members of this court were unable to agree, and the questions now raised were directly passed on. The petition is dismissed.