THE MASON-DIXON LINES, INC.

*v.*

JANIE LETT.

(*Knoxville,* September Term, 1956)

Opinion filed December 7, 1956.

172

MINTER, McLELLAN & TIPTON, Kingsport, for plaintiff in error.

DODSON & DODSON, Kingsport, for defendant in error.

Mr. Justice Tomlinson delivered the opinion of the Court.

The widow was allowed workman's compensation on a finding by the Circuit Judge that the death of her husband, C. V. Lett, arose out of and in the course of his employment by The Mason-Dixon Lines, Inc. In so doing, the Judge rejected the insistences of Mason-Dixon that deceased (1) was not working for it at the time of his death, but if so, (2) he was an (a) independent contractor, or (b) casual employee, (3) employed as a farm laborer, and (4) met his death by reason of an act of God. These insistences are renewed in support of its appeal.

Since this Court may not disturb the fact findings of the trial court in a workmen's compensation case when supported by substantial evidence, no attention need be given to the fact that certain substantial evidence in support of the findings is contradicted in some respects by evidence offered in behalf of Mason-Dixon.

Mason-Dixon operates truck commercially. It likewise maintains what seems to be a commercial pleasure resort, consisting of a clubhouse, lake, boat dock, boats, in the setting of a lawn and appropriate shrubbery, etc., and around which it maintains a fence.

Adjoining the resort, Mason-Dixon has some thirty (30) acres of land which, during 1954, was put to the use of growing certain agricultural products with the oper-

ator thereof being the deceased, C. V. Lett on a share-crop basis.

In connection with the operation and maintenance of this pleasure resort, and especially for the watering of its lawn and shrubbery, and for use in watering growing crops on the land allocated to agriculture, Mason-Dixon maintained a pump and connecting aluminum pipes running here and there from its lake over both the land devoted to (1) agriculture, and (2) the pleasure resort. The pipes were movable from place to place on all the premises mentioned. Water was forced by this pump through these pipes onto such of the premises as the pipes might be at a particular time. The maximum unit for watering at one time was seven (7) acres.

Deceased was employed by Mason-Dixon to work at this resort when not engaged in his crops, and was paid $1 per hour for his services. Apparently, he was allowed to keep his own time, when a foreman was not there. He took care of the lawn, boat houses, swimming pool, fencing, etc. The record discloses that he worked consistently a number of weeks prior to May 6, 1954. Thereafter, he did no more work until July 2, the day of his death, being engaged in his crops during this interim.

On the day of his death a foreman for Mason-Dixon directed him to irrigate, and do some fencing. In order to lay the pipes for such irrigation the foreman sent over four other Mason-Dixon employees, including the son of the deceased. These workmen, with the exception of the son, left after the pipes were laid. A number of hours are required for the proper watering of each unit.

When the deceased came home from his work for the mid-day meal he was "up" with his crops. After eating, he returned to the premises of Mason-Dixon to do this

fencing, etc. He carried along a hammer, staple puller, staples and a carpenter's apron. He did some fencing or repairing thereof. During this time the pump was in operation, watering at the same time the lawn and one of the crops.

With matters in the status related, the deceased, as best we can interpret this record, "went to the lake where he watered the" saddle horses of Mason-Dixon. Then it was "there come up this storm and he (the deceased) went down to cut it (the pump) off". The witness, this son, was 300 to 400 yeards away from the pump screwing the spigot off the hose through which water was being pumped when there occurred a flash of lightning, which shocked the witness whose hand was in contact with the spigot.

The dead body of the deceased was on the ground by the pump, and the print of his hand, that is, the outer skin thereof was burned on the pump. His body was burned here and there.

The only conclusion permissible from the record is that Lett met his death by this stroke of lightning because his hand was on the pump which, we may infer, was made of iron or steel, he being in the act of cutting off the pump.

■ The evidence permits the Trial Court's finding that this accident arose out of and in the course of his employment that day by Mason-Dixon. He had been ordered by his foreman to fence and irrigate, and that is one of the chores he was performing. The foreman who gave this order concedes the obligation of Mason-Dixon to pay him for what he did that afternoon. It was proper that he cut the pump off, and this, as a part of that which he was told to do, or, at least, it may be so inferred from

the evidence. But, says Mason-Dixon, this death was the result of an act of God, to-wit, the lightning.

█ In *Jackson v. Clark & Fay, Inc.*, 197 Tenn. 135, 141, 270 S.W.2d 389, this Court noted that acts of God are compensable under the statute when the employee, by reason of his duties, is exposed to a peculiar danger from such act; that is, one greater than persons generally in the community. The rule seems to be general, and is well established. The difficulty is in determining when it is applicable. Among the texts and authorities where there are collected decisions on this point in cases arising from lightning strokes are Volumes 13, 40 and 46 A.L.R., respectively, at pages 977, 401, and 1218, respectively.

█ It is manifest from a reading of the annotations in the references that the Courts had difficulty frequently in reaching a decision. But there is to be gathered from an overall appraisal of the decisions the thought that the judgment of the lower Court allowing compensation is not disturbed where there is substantial evidence to support a conclusion ''that there springs from the employment in which the workman was engaged a special risk of being struck by lightning''.

In the New York case of *Madura v. City of New York*, 238 N.Y. 214, 144 N.E. 505, 506, the action of the trial tribunal in making an award was sustained on the ground that:—''It is a matter of widespread scientific belief and declaration that a wet tree is a ready conductor of a current of electricity, and that a person standing under such a tree is exposed to a degree of danger which does not confront one in the open spaces of a highway or field.'' And the New York Court in *Emmick v. Hanrahan Brick and Ice Co.*, 206 App. Div. 580, 201 N.Y.S. 637, 638, affirmed an award upon evidence

that the employee was struck while working upon a shed which had "a twisted wire cable, which was looped around the rafters * * * and passed therefrom" within a short distance of where the employee was working. In the Texas case of *United States Fidelity and G. Co. v. Rochester,* Tex. Civ. App., 281 S.W. 306, it was held that the finding of an accident board and jury could not be set aside in a case where the employee "was killed by a stroke of lightning while excavating out doors a pipe line with a steel shovel" because such a finding based on such circumstances could not be said to be unsupported by evidence. 46 A.L.R. at page 1218.

█ As in the Texas case, so here, this Court cannot say that the finding of the Trial Judge to the effect that Lett was subjected to an extra hazard within the premises is unsupported by substantial evidence when that evidence is that, while working outdoors and pursuant to his duties, a thunder storm having arisen, he was in the act of cutting off the ignition of an iron or steel pump with aluminum pipes connected therewith, when he was killed by a lightning stroke conducted into his body through such instrumentality.

Mason-Dixon insists, however, that the employment was casual; hence, not compensable. Section 50-906(b) T.C.A. That section defines a casual employee as "one who is not employed in the usual course of trade, business, profession, or occupation of the employer".

█ In considering this casual employment insistence, it is well to observe at the outset that it is not the regularity of the employment of an injured workman that is important. "It is the regularity of the employer's exercise of a given employment that is important". *Dancy v. Abraham Brothers Packing Company,* 171 Tenn. 311,

325, 326, 102 S.W.2d 526, 531. Hence, the fact that Lett had not worked for Mason-Dixon in its operation of this pleasure resort from May 6 to July 2 (the period in which he was engaged in his crops) is unimportant in determining whether Lett was employed in the usual course of the business of Mason-Dixon.

■ There is express affirmative evidence that Mason-Dixon was engaged in the business of commercial trucking. But this, *per se,* is not evidence that it was not also engaged regularly in some other business. "An employer's business may embrace two occupations * * * both * * * within the Workmen's Compensation Act". *Rose & Co. v. Snyder,* 185 Tenn. 499, 518-519, 206 S.W.2d 897,, 906.

■ The uncontradicted evidence is that the deceased was employed by Mason-Dixon to work at this resort when not employed in his crops. And uncontradicted is the testimony that it maintained "an average of more than five men working around the dock and the clubhouse". This evidence brings the case within the rule stated in *Dancy v. Abraham Brothers Packing Company, supra,* 171 Tenn. at page 326, 102 S.W.2d at page 531, to-wit:—"If the employer 'regularly' employs employees in a given class of work, this may be evidence that such work is in the usual course of such an employer's trade, business, or occupation".

So, it was at least *prima facie* established by the evidence that the maintenance of this pleasure resort was a regular business of Mason-Dixon. Nor was there any evidence to the contrary. Hence, this Court is not privileged to disturb the Trial Court's finding that Lett's employment was not casual.

It is obvious from all that has been said that Lett was neither an agricultural worker nor an independent contractor in so far as either applies to this case.

Judgment affirmed with costs assessed against Mason-Dixon, and the cause remanded.